UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS MIKEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-01795-JMS-DML ) |
| DOCTOR IPPLES, et al, | ) ) |
| Defendants. | ) ) |

## Entry Discussing Defendants Monica Gipson and Esther Hinton's Cross-Motion for Summary Judgment

Plaintiff Dennis Mikel brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants have violated his rights by failing to treat several of his medical conditions. With regard to defendants Monica Gipson and Esther Hinton ignored his complaints that he was not receiving his medications for his neck pain and gastroesophegael reflux disease. Mr. Mikel seeks summary judgment against all defendants and defendants Ms. Gipson and Ms. Hinton have moved for summary judgment on Mr. Mikel's claims against them. For the following reasons, Gipson and Hinton's motion for summary judgment, dkt. [97], is **granted in part and denied in part** and Mr. Mikel's cross-motion for summary judgment is **denied** to the extent that he seeks summary judgment on his claims against these defendants.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable

inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001). Even though the parties have filed cross motions for summary judgment, the general standards for summary judgment do not change: with "cross summary judgment motions, we construe all facts and inferences therefrom 'in favor of the party against whom the motion under consideration is made.'" *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006)

## II. Undisputed Facts

The following statement of facts has been considered pursuant to the standards set forth above.

Ms. Gipson is employed as the Director of Medical and Clinical Health Care Services at the Indiana Department of Correction ("IDOC"). At the time of the acts alleged in Mr. Mikel's complaint, IDOC employed Corizon Health to administer medical care and treatment to inmates incarcerated within IDOC facilities. Treatment decisions for inmates were made by medical professionals employed by Corizon Health staff. In her position, Ms. Gipson delegates to her staff, IDOC Grievance Specialists, the assignment of reviewing medical grievance appeals and,

2

upon final review and decision, forwards those grievances to the IDOC Administrative Assistant to enter responses into the IDOC grievance tracking system. Ms. Gipson is not authorized to instruct any medical care professionals to begin, change, or cease treatment for any medical condition complained of by an inmate.

Ms. Hinton is employed as a Contract Monitor for IDOC. Her duties include ensuring that decisions comply with contractual agreements and IDOC Healthcare Directives pertaining to the administration of health care services to IDOC inmates. Her role in the IDOC offender grievance system is limited to reviewing grievance appeals and ensuring compliance with IDOC Healthcare Directives; she has neither the authority nor the training to direct physicians or other medical staff in making health treatment decisions. Ms. Hinton is not authorized to instruct any medical care provider to begin, change, or cease treatment for any medical condition. The only involvement Ms. Hinton had in the acts at issue in this case was responding to a grievance from Mr. Mikel and stating that Mr. Mikel was receiving his medications. Dkt. 78-17 pg. 42. Mr. Mikel states that, regardless of what his medical records reflected, he was not receiving his medications.

### III. Discussion

Mr. Mikel's claim against Ms. Gipson and Ms. Hinton is that these defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate

3

indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). The claims against Ms. Gipson and Ms. Hinton will be discussed separately.

A. *Ms. Gipson*

Mr. Mikel claims that Ms. Gipson mishandled his requests for healthcare. Ms. Gipson argues that she did not personally participate in any of Mr. Mikel's treatment. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

The only evidence involving Ms. Gipson includes a grievance response in which others responded to grievances filed by Mr. Mikel on her behalf. Dkt. 78-17, pg. 20-21, pg. 42. There is also a notation in Mr. Mikel's medical records stating that he will be informed that, based on a facility-wide protocol, his prescription for Prilosec will not be renewed. Dkt. 78-12, pg. 1; dkt. 78-13, pg. 2. But there is no indication that Ms. Gipson had created the grievance response or participated in creating the policy that resulted in the failure to renew Mr. Mikel's prescriptions.

4

Because Ms. Gipson had no personal involvement in Mr. Mikel's medical care, she is entitled to summary judgment on the claims against her.

B. *Ms. Hinton*

Mr. Mikel claims that Ms. Hinton was deliberately indifferent in her responses to his grievances Ms. Hinton seeks summary judgment on Mr. Mikel's claims arguing that she appropriately investigated and responded to his grievance appeals and she is entitled to rely on the expertise of his healthcare providers.

Non-medical prison employees, like Ms. Hinton, may generally rely on the decisions of medical personnel in making healthcare decisions for inmates. *See Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011). But non-medical defendants cannot simply ignore an inmate's plight. *Id.* (citing *Greeno,* 414 F.3d at 656 (stating that "[p]erhaps it would be a different matter if [the non-medical defendant] had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns.")); *see also see also Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate]."). "The plaintiff must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755-56 (internal quotations omitted). Once an official is alerted to such a risk, the "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (quoting *Arnett*, 658 F.3d at 756).

Ms. Hinton's job duties as Contract Monitor for the IDOC are to review grievance appeals and to ensure compliance with IDOC Healthcare Directives. Her involvement with Mr. Mikel's medical care was providing a response to a grievance appeal in which he claimed his medications for his neck pain and reflux had been stopped. She reviewed his file and found no documentation to support his contention that his medication was discontinued and suggested that he file a healthcare request if there was an oversight.

Based on this evidence, a reasonable jury might or might not conclude that Ms. Hinton was presented with information that would have alerted her to an excessive risk to Mr. Mikel's health. *See Arnett*, 658 F.3d at 756. Though his records reflected that he was prescribed medications for his conditions, he stated that he wasn't receiving them. A reasonable jury might conclude that, in response to a complaint that Mr. Mikel was not *receiving* his medications, she should have done more than merely review the records and respond that his medications were *prescribed*. Because there is an issue of fact regarding whether Ms. Hinton disregarded an excessive risk to Mr. Mikel's health and safety, neither Mr. Mikel nor Ms. Hinton is entitled to summary judgment on Mr. Mikel's claims.

### IV. Conclusion

For the foregoing reasons, Ms. Gipson and Ms. Hinton's cross-motion for summary judgment, dkt. [97], is **granted in part and denied in part**. Ms. Gipson is entitled to summary judgment and the **clerk shall** terminate her as a defendant. Ms. Hinton is not entitled to summary judgment and the claims against her shall proceed. Mr. Mikel's motion for summary judgment is **denied in part** to the extent that he seeks summary judgment on his claims against Ms. Gipson

and Ms. Hinton. Mr. Mikel's request for summary judgment against the other remaining defendants will be addressed in a separate order.

No partial final judgment shall issue as to the claims resolved in this ruling.

**IT IS SO ORDERED.**

Date: 09/07/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DENNIS MIKEL
972897
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All electronically registered counsel